UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


Butler Behavorial Health Services, Inc.,

           Plaintiff,

          v.                                   Case No. 1:09-cv-0073

Arch Insurance Company, et al.,

           Defendants.

## **ORDER**

This matter is before the Court upon a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendants Arch Insurance Company and Arch Insurance Group, Inc. (collectively "Arch") (doc. 6). Plaintiff Butler Behavioral Health Services, Inc. ("BBHS") opposes the motion (doc. 9) and Defendants have filed a reply in support of their motion (doc. 12).

BBHS originally filed this action in the Butler County, Ohio Court of Common Pleas, seeking declaratory relief and damages for Arch's refusal to provide insurance coverage to BBHS for a "Claim" (as that term is defined under two potentially applicable policies issued by Arch to BBHS) that a former employee had brought against BBHS.[1] Defendants removed the case to the district court based on diversity jurisdiction (doc. 1). Defendants now move to dismiss the complaint on the ground that Plaintiff has not satisfied the requirements for coverage under either of the two policies.

---

[1]The Court will hereinafter in this Order designate the claim for which BBHS seeks coverage under the policies issued to it by Arch as the "Claim."

## I. Allegations of the Complaint

BBHS purchased two separate non-profit organization and management liability insurance policies in December 2006 ("07 Policy") and December 2007 ("08 Policy"). These policies were "claims made and reported policies," meaning each policy is limited to wrongful acts for which "claims" as defined under the policy are first made within the "Policy Period" and are reported to the Insurer no later than sixty days after the policy's expiration. On June 4, 2008, Arlene Morgan, a former employee of BBHS, filed a complaint in federal district court against BBHS alleging two counts under the Family Medical Leave Act, 29 U.S.C. § 2601, et seq., and a third count under Ohio Rev. Code § 4112.02 for BBHS's refusal to grant a reasonable accommodation for her disability and for termination of her employment. Shortly thereafter, BBHS gave Arch notice of the lawsuit. On June 16, 2008, Arch responded by letter to BBHS and acknowledged receipt of the notice.

On July 2, 2008, Arch denied coverage to BBHS for the "Claim." Arch reasoned that the "Claim" against BBHS was first made on March 5, 2007, when Morgan filed a charge with the Ohio Civil Rights Commission ("OCRC") against BBHS.[2] Arch contends that BBHS did not give it notice of the "Claim" until June 10, 2008, which was after Morgan had filed her lawsuit.

Upon denial of coverage, Plaintiff was compelled to arrange the defense of Morgan's suit at its own expense. In December 2009, the suit was resolved through a confidential settlement.

## II. Contract Provisions

The provisions of the contract that are necessary for the Court's analysis are set forth herein. Each section, unless otherwise noted, is identical in both policies.

---

[2]The charge was dismissed on January 10, 2008, after the OCRC found that there was no probable cause that BBHS had committed any violation of Ohio Rev. Code § 4112. The charge is not part of the record before the Court.

On the front of each policy, the first paragraph provides in bold capital font:

NOTICE: THIS IS A CLAIMS MADE AND REPORTED POLICY. EXCEPT AS MAY BE OTHERWISE PROVIDED HEREIN, THIS POLICY IS LIMITED TO LIABILITY FOR WRONGFUL ACTS FOR WHICH CLAIMS ARE FIRST MADE WHILE THE POLICY IS IN FORCE AND WHICH ARE REPORTED TO THE INSURER NO LATER THAN SIXTY (60) DAYS AFTER THE TERMINATION OF THE POLICY. PLEASE READ AND REVIEW THE POLICY CAREFULLY.

Section II(c) defines a "Claim" as:

(1) a written demand against the insured for monetary, non-monetary or injunctive relief; or

(2) a civil or arbitration proceeding against an insured for monetary, non-monetary or injunctive relief which is commenced by:

(i) service of a complaint or similar pleading; or

(ii) receipt of filing of a notice of charges; or

(3) a formal civil administrative or regulatory adjudicatory proceeding against any Insured Person or, with respect to any Wrongful Act described in the definition of Employment Claim, against the Organization commenced by the filing of a notice of charge, formal investigative order or similar document, including without limitation any proceeding by the Equal Employment Opportunity Commission of other similar governmental authority.

Section II(f) defines "Employment Claim" as:

[A]ny Claim to the extent it is brought and maintained by or on behalf of any past, present, or prospective employee of the Organization for a Wrongful Act in connection with any actual, alleged or constructive wrongful dismissal, discharge or termination of employment; . . . violation of any federal, state or local statute, regulation, ordinance, common law or public policy concerning employment or discrimination in employment; . . . wrongful discipline; . . . [r]etaliation; . . . or other employment related torts.

Section IV, titled "Exclusions," provides:

The Insurer shall not be liable under any Coverages to make any payment for Loss as a result of a Claim made against an insured:
. . .
(d) alleging, arising out of, based upon or attributable to:

(1) any demand, suit, proceeding or formal investigation pending on or before the date stated in item 5 of the Declarations; or

(2) any Wrongful Act alleged in such pending or prior demand, suit, proceeding or formal investigation, or any Wrongful Act whenever occurring, which together with any Wrongful Act alleged in such pending or prior demand, suit, proceeding or formal investigation, constitute Interrelated Wrongful Acts.

A "Wrongful Act" is defined by Section II(u) as:

(1) any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by the Insured Persons in their respective capacities as such or by a director, trustee or officer of the Organization in a Non-Profit Outside Position, or with respect to Coverage C, by the Organization . . .

"Interrelated Wrongful Acts" are defined in Section II(k) as:

Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transaction or causes.

Section IX sets out the terms of the notice requirement. It provides:

(a) The Organization or an Insured Person shall, as a condition precedent to the obligations of the Insurer under this Policy, give written notice to the Insurer . . . of a Claim made against an Insured as soon as practicable after the Named Insured's chief executive officer (or equivalent position) first becomes aware of the Claim, but in all events no later that sixty (60) days after the end of the Policy Period or the Discovery Period (if applicable).

(b) If during the Policy Period the Organization of an Insured Person shall become aware of any circumstance which may reasonably be expected to give rise to a Claim being made against an Insured and shall give written notice to the Insurer of the circumstances, the anticipated allegations of Wrongful Act(s) and the reasons for anticipating such a Claim, with full particulars as to dates, persons and entities involved, then a Claim which is subsequently made against such Insured and reported to the Insurer for a Wrongful Act:

(1) which is the same as any Wrongful Act alleged or contained in such notice; or

(2) which together with any Wrongful Act alleged or contained in such

Page 4

> notice constitute Interrelated Wrongful Acts,
>
>> shall be considered made at the time such notice of circumstances was first given to the Insurer . . .

### III. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) . "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations and quotation marks omitted). Although the court must accept well-pleaded factual allegations of the complaint as true for purposes of a motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*.

The second step is to determine whether the complaint pleads "a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 556). The standard for plausibility is not akin to a "probability requirement," but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). Thus, when "a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement

to relief." *Id*. (citing *Twombly*, 550 U.S. at 557) (internal quotations omitted)).

## IV. Applicable Law

The parties have not addressed which state's law governs this diversity action, and the policies do not contain a choice of law provision. As a threshold matter, the Court must therefore determine which state's law applies to the parties' dispute.

In a diversity action, the district court applies the choice of law rules of the jurisdiction where it sits. ***Klaxon Co. v. Stentor Electric Mfg. Co.,*** 313 U.S. 487, 496 (1941); ***Johnson v. Ventra Group, Inc.,*** 191 F.3d 732, 738 (6th Cir. 1999). Therefore, Ohio's choice of law rules govern. Under Ohio's choice of law rules, the laws of the state with the most significant relationship to the contract should govern disputes arising from the contract. ***National Union Fire Ins. Co. v. Watts,*** 963 F.2d 148, 150 (6th Cir. 1992). Ohio has adopted a test set forth in the Restatement (Second) of Conflict of Laws § 188 for making this determination. *Id.* Section 188(2) provides:

> In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
> (a)    the place of contracting,
> (b)    the place of negotiation of the contract,
> (c)    the place of performance,
> (d)    the location of the subject matter of the contract, and
> (e)    the domicil, residence, nationality, place of incorporation and place of business of the parties.

The record in this case has not yet been fully developed. Therefore, much of the information needed to weigh the above factors is not present. It appears that Ohio, Kansas, and New York all potentially have an interest in this suit in that New York is the site of Arch's administrative offices, Kansas is Arch's home state and the site of its principal place of business, and Ohio is BBHS's home

state and the state where its principal place of business is located. Ohio, however, has additional significant contacts that the other states lack. The policies were issued to BBHS in Ohio, and the "Claim" for which BBHS seeks coverage originated in Ohio. Therefore, based on the record before the Court, the Court finds that Ohio has the most significant relationship to the policies and its contract laws govern.

In Ohio, normal contract rules apply to the interpretation of insurance contracts. *Weiss v. St. Paul Fire & Marine Ins. Co.*, 283 F.3d 790, 796 (6th Cir. 2002) (citing *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 519 N.E.2d 1380, 1383 (1988)). The primary role of the court in examining a written instrument is to ascertain and give effect to the intentions of the parties. *Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Authority,* 78 Ohio St.3d 353, 361, 678 N.E.2d 519, 526 (1997). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Id*. (quoting *Kelly v. Med. Life Ins. Co.,* 31 Ohio St.3d 130, 509 N.E.2d 411, syll. ¶ 1 (1987)). The court must give plain language its ordinary meaning unless "manifest absurdity" results or it is clearly evident that another meaning was intended. *Id*. If the terms of the contract are unambiguous, the court determines the meaning of the contract. *Weiss,* 283 F.3d at 796 (citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 652 N.E.2d 684, 686 (1995)). A term is ambiguous if it is reasonably susceptible of more than one meaning. *Id*. (citing *King*, 519 N.E.2d at 1383).

## V. Arguments of the Parties

The Defendants argue that BBHS is not covered for the "Claim" under either the 07 or the 08 Policy. Their reasoning is summarized as follows: The "Claim" was not first made and properly noticed under either policy. Arch was first provided notice of the "Claim" by letter on June 10, 2008, which is more than 60 days after the 07 Policy had expired on December 1, 2007. Thus, the

"Claim" was not properly noticed under the 07 Policy and there is no coverage under that Policy. There is likewise no coverage under the 08 Policy because the "Claim" was not first made during that Policy Period. The OCRC charge and the district court complaint arise from the same Interrelated Wrongful Acts, making them a single "Claim" as defined under the Policy. The "Claim" was first made against BBHS on March 5, 2007, which is over nine months before the 08 Policy Period began. Thus, because Arch did not receive notice of the "Claim" within the time period required under the 07 Policy, and because the "Claim" was first made outside the 08 Policy Period, there is no coverage for the "Claim."

Plaintiff denies that the OCRC charge and the district court complaint constitute the same "Claim," and Plaintiff further disputes that it was required to notify Arch of Morgan's wrongful termination claim prior to the filing of her lawsuit. On the contrary, Plaintiff alleges that the district court complaint contains allegations of fact that occurred subsequent to the filing of the OCRC charge. Plaintiff argues that the "Claim" for which it seeks coverage was first made during the 08 Policy Period when Morgan filed her lawsuit, and it properly notified Arch of the "Claim" as required under the terms of the 08 Policy, so there is coverage for the "Claim." Additionally, Plaintiff argues that coverage is not barred under Section IX(b) of the 08 Policy for failure to give notice of a reasonably expected claim because it could not have anticipated the Morgan lawsuit based on her filing of the OCRC charge.

## VI. Discussion

The complaint is not subject to dismissal if the alleged facts, taken as true, establish that a "Claim" as defined under Section II(c) of the 07 and 08 Policies had been made against BBHS, the "Claim" was first made during the Policy Period, and the "Claim" was reported to the Insurer within the policy's time limits. Otherwise, BBHS does not have a plausible claim for coverage and its

complaint must be dismissed.

The Morgan lawsuit satisfies the definition of a "Claim" under the policies. Sections II(c) and II(f) of the policies collectively define "Employment Claim" as any claim where the Insured is alleged to have violated federal or state employment laws. The complaint Morgan filed in her lawsuit alleged that BBHS violated both federal and state employment laws.

As for the second requirement, because there are not sufficient facts in the record to enable the Court to conclusively determine that the OCRC charge and the lawsuit involve "Interrelated Wrongful Acts" as that term is defined in the policies, the Court must assume for purposes of the motion to dismiss that the wrongful acts involved in the charge and the lawsuit are not interrelated. Thus, the Court must look to the lawsuit alone to determine whether the "Claim" against BBHS was first made during the relevant Policy Period. Morgan filed her district court complaint on June 16, 2008, and the 08 Policy Period ended on December 1, 2008. Thus, the "Claim" was first made during the 08 Policy Period.

Finally, the 08 Policy requires the Insured to notify the Insurer of a claim as soon as practicable after the Insured is aware of the claim, but no later than sixty (60) days after the end of the Policy Period. It appears from the complaint that BBHS first became aware of the "Claim" for which it seeks coverage shortly after Morgan filed her lawsuit on June 4, 2008. BBHS notified Arch of the "Claim" before June 16, 2008. BBHS thus appears to have satisfied the 08 Policy's notification requirement.

Because BBHS has alleged sufficient facts to demonstrate a plausible claim for relief, dismissal is not appropriate at the pleading stage.

## VII. Conclusion

In accordance with the foregoing, Defendants' motion to dismiss is **DENIED**.  This case shall proceed in accordance with the schedule established by the Court.

**IT IS SO ORDERED.**

S/ Herman J. Weber
HERMAN J. WEBER, SENIOR JUDGE
 UNITED STATES DISTRICT COURT
